The State v. Peak.

THE STATE OF KANSAS v. MATT PEAK.

No. 13,397.   (72 Pac. 237.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS— *County Attorney Need Not File Affidavits and Evidence.* Where an information charging a violation of the prohibitory liquor law is sworn to positively the county attorney is not required to file therewith affidavits or oral evidence reduced to writing, which were obtained under section 2472, General Statutes of 1901.

2. ———— *"The Kansas Utopia Association."* Where several persons associate themselves together and each pays a certain sum of money to one for the purpose of having him procure and keep on hand a stock of intoxicating liquors, from which each may secure any quantity, either by the drink or bottle, by paying

therefor in cash, or by having the amount charged against the money previously advanced, each delivery thus made to any of such persons, either for cash or to be charged, is a separate sale, and the place where such business is conducted is a nuisance under the statute.

Appeal from Brown district court; WILLIAM I. STUART, judge. Opinion filed April 11, 1903. Affirmed.

*C. C. Coleman*, attorney-general, and *W. F. Means*, county attorney, for The State.

*John Brown, S. F. Newlon, Crane & Woodburn*, and *Frank A. Bush*, for appellant.

The opinion of the court was delivered by

GREENE, J. : Matt Peak appeals from a conviction of selling intoxicating liquors and keeping a nuisance. The appellant was the local manager of a club called "The Kansas Utopia Association," at Everest, Kan. This association appears to have been organized for the purpose of keeping on hand a stock of intoxicating liquors for the exclusive use of the members of the association and persons whom the members might invite with them to the place where the liquors were kept to partake thereof. Any person desiring to become a member of the association might do so by paying to the manager two dollars and signing a book. We are not informed what this book contained. The two dollars thus paid was used in the purchase of liquors, and when one became a member he immediately became a joint owner with all the other members of whatever stock of liquor was on hand at the time. A member could get any quantity of liquor he desired by the drink, bottle, or otherwise, by paying therefor. The price charged for a glass of

beer was five. cents ; of whisky, per drink, ten cents. If the quantity taken at any time did not exceed two dollars, the member could pay the cash therefor, or have the amount charged against the two dollars already advanced. The liquor was kept in bulk, and no attempt at separation was made until one of the members called for a drink or bottle, when such amount was withdrawn from the common stock and delivered, either upon the payment of cash therefor, or charged as indicated. The liquors were kept at the lodge room of the association, where the members and their friends resorted for the purpose of drinking. The appellant was the keeper, and the evidence fully sustains the charges of the sales to the members of the association, if the delivery of the liquor to such persons, and receiving pay therefor, as indicated, be held to be a sale.

The contention of the appellant is that this stock so kept by the association was the private property of the members, and that he was selected for the purpose of delivering to each member that portion which was already his, and for the further purpose of keeping an account thereof between the members, and to keep the stock replenished from time to time, as demand required, from the funds thus advanced as an admission fee and from that taken in by the cash sales ; that such acts do not violate the prohibitory law, and he is, therefore, not guilty of any offense.

Before Peak was informed against, the county attorney summoned a number of witnesses, from whom he solicited information, upon which he filed the information in this case. Some of these statements were reduced to writing and sworn to ; others were oral. The information was sworn to positively by the county attorney, but he did not file any of the

statements so taken. The appellant moved the court to require the county attorney to file with the information the statements thus obtained. This motion was overruled, and of this complaint is made. Section 2473, General Statutes of 1901, provides:

"If the testimony so taken shall disclose the fact that an offense has been committed against any of the provisions of this act, the county attorney shall forthwith file such statement, together with his complaint or information against the person having committed the offense, in some court of competent jurisdiction; and such statement or testimony, together with the information or complaint of such county attorney, when verified by him on information and belief, shall have the same effect as if such information or complaint had been verified positively."

It will be observed by this statute that the law requires the county attorney to file these statements only when the information is verified upon information and belief. He is not required to file them where the information is verified positively.

Some complaint is also made about the manner of the election by the county attorney of the counts upon which he would rely for conviction. There is nothing substantial in this contention and no error was committed.

Another alleged error is that the court instructed the jury that under the information, if the evidence warranted, the defendant might be convicted of keeping and maintaining a clubroom. The defendant contends that the information was not drawn under the clubroom provision of the statute and contains no allegations upon which the defendant could be convicted of keeping or maintaining a clubroom. We do not believe this position is well taken. The facts charged in the information are sufficient to support a convic-

tion either for maintaining a nuisance under the nuisance provision of the statute or for keeping a clubroom under that provision of the statute.   However, since the keeping of a clubroom is an inferior degree of the offense, and since the jury found the defendant guilty of committing the greater offense, he has no cause to complain of the instruction given.

"And when the instructions complained of relate to a degree of crime inferior to the principal offense charged in the information, and inferior to that of which the defendant is convicted, they will be deemed not to have predjudiced the defendant, whether erroneous or not."   (*The State v. Dickson*, 6 Kan. 209 ; *The State v. Rhea*, 25 id. 576 ; *The State v. McCarty*, 54 id. 52, 36 Pac. 338.)

The main contention of appellant is that the facts established by the evidence are not in violation of the prohibitory law, and this question is presented here upon the following instruction, given by the court, which appellant claims was erroneous :

"Where any number of persons associate themselves together for the purpose of procuring intoxicating liquors, and a member of such association pays to the manager or agent for such association money for the purpose of procuring intoxicating liquors, and such liquors are procured by the manager or agent of such association, and kept on hand for distribution among the members of such association, and where a member thereof procuring any part of such intoxicating liquors must either pay to the manager or agent the price thereof, or have the same charged against a fund theretofore advanced, such transaction would constitute a sale."

The instruction as applied to the facts in this case was correct.   It appears from the evidence that the Kansas Utopia Association, stripped of its subterfuges and pretenses, was a whisky saloon—a shift,

45—66 KAN.

devicefully planned to evade the prohibitory law, so patent that it hardly deserves the serious consideration of a court.   Laws are made to be observed, not violated.   Courts look with disfavor upon cunning devices to evade the law.   This device does not possess the charm of novelty.   A man could patronize this saloon by paying two dollars to become a member. When he wanted a drink, or any quantity of intoxicating liquor, he paid for it, or, if the quantity did not exceed the value of two dollars, he could have it charged against the money he had advanced.

The judgment of the court below is affirmed.

All the Justices concurring.