No. 26,834.

THE STATE OF KANSAS, *Appellee,* v. F. G. HARRISON, *Appellant.*

SYLLABUS BY THE COURT.

HOMICIDE—*Involuntary Manslaughter—Culpable Negligence — Evidence — Instructions.* The proceedings in a prosecution for manslaughter in the fourth degree, occasioned by culpable negligence in the operation of an automobile, considered, and *held,* an instruction relating to causing bodily harm by culpable negligence was not prejudicial, and the instruction was properly given; the jury were instructed with sufficient fullness and accuracy respecting all matters of law necessary for their information in giving their verdict; rulings relating to admission and rejection of evidence were correct, and the verdict was sustained by sufficient evidence.

Appeal from Dickinson district court; CASSIUS M. CLARK, judge. Opinion filed October 9, 1926. Affirmed.

*S. M. Brewster,* of Topeka, and *Ira C. Snyder,* of Manhattan, for the appellant.

*Charles B. Griffith,* attorney-general, and *Paul H. Royer,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant was convicted of manslaughter in the fourth degree, and appeals.

On the evening of June 25, 1925, while defendant was driving his Cadillac automobile eastward on the paved highway between Abilene and Chapman, he collided with a Ford automobile. The Ford was standing on the south side of the highway, with its front toward the east. The left wheels were on the pavement, and the right wheels were on the dirt shoulder at the side of the pavement. D. J. O'Connor was standing in front of the Ford. The impact of the Cadillac car drove the Ford forward, and O'Connor was injured. He was taken to a hospital in Abilene, and it was found he had sustained fracture of the right kneecap and a broken fibula. The next day he was placed under an anesthetic and an operation was performed on the knee. On the following day he developed symptoms of beginning pneumonia, and on July 4 he died of pneumonia. An autopsy disclosed the pneumonia was of traumatic origin.

The information charged defendant operated the Cadillac car with culpable negligence, in a manner disclosing violation of the

Criminal Law, 16 C. J. p. 962 n. 6. Homicide, 30 C. J. pp. 408 n. 30, 417 n. 91.

State v. Harrison.

statute regulating operation of motor vehicles on public highways outside of cities, and charged the wounding and the death of O'Connor were caused by such negligence. The court instructed the jury as follows:

"The offense charged against the defendant in the information is known as manslaughter in the fourth degree, and is defined by the laws of Kansas as follows: 'Every other killing of a human being by the act, procurement or culpable negligence of another which would be manslaughter at common law and which is not excusable or justifiable or is not declared to be murder or manslaughter in some other degree, shall be deemed manslaughter in the fourth degree. The punishment provided for this offense is that the person so convicted shall be punished by confinement at hard labor for a term not exceeding two years or by imprisonment in the county jail not less than six months.'

"3. There is included within this offense charged in the information another and minor offense which is defined and for which punishment is prescribed by the laws of the state of Kansas in the following words: 'If any person shall be maimed, wounded, or disfigured, or receive great bodily harm, or his life be endangered by the act, procurement, or culpable negligence of another, in cases and under circumstances which would constitute murder or manslaughter if death had resulted, the person by whose act, procurement or culpable negligence such injury or danger of life shall be occasioned, shall in cases not otherwise provided for be punished by confinement at hard labor not exceeding five years or in the county jail not exceeding six months.'

"4. This offense will hereafter in these instructions be referred to as unlawfully causing great bodily harm, as defined in section 21-435 of the Revised Statutes of the state of Kansas of the year 1923.

"5. To the major offense charged in the information and to the minor offense included within it, the defendant has entered his plea of not guilty, and there is thereby presented for your determination, first the question whether or not the defendant is guilty of manslaughter in the fourth degree; second, if not guilty of manslaughter in the fourth degree, whether or not he is guilty of the minor offense therein included, as hereinbefore defined.

"7. By the laws of this state it is made unlawful for a person to drive an automobile outside of a city or village on a public highway at a speed greater than forty miles an hour, or at a speed greater than is reasonable and proper, having regard for the traffic, and use of the road, and the condition of the road, or at a rate of speed such as to endanger the life or limb of any person thereon, and the driving of an automobile on a public highway in violation of any of the aforesaid provisions of law is culpable negligence. If, therefore, you find from the evidence beyond a reasonable doubt that on June 25, 1925, and at the place alleged in the information, the defendant was driving an automobile on a public highway in Dickinson county, Kansas, and with culpable negligence as alleged ran against a Ford automobile standing on said highway, causing said Ford automobile to lunge forward and to run against, upon and over D. J. O'Connor, whereby the said D. J. O'Connor was thrown with great force and

violence upon the ground and received divers mortal wounds, bruises and contusions upon his body from which he thereafter died, and that the same would not have resulted excepting such negligence, then and in that event you will find the defendant guilty of manslaughter in the fourth degree.

"8. It is not necessary that the state show the defendant intended any of the injuries claimed to have resulted from the collision mentioned. It is a general principle that one who, without intention to take life, causes the death of another by his own unlawful act, is criminally responsible for the killing. It is a sufficiently accurate statement for any purposes of yours that if one who causes the death of another without an intention to take life and while engaged in doing some act in itself unlawful, the killing will be manslaughter.

"9. If you find from the evidence beyond a reasonable doubt that on June 25, 1925, and at the place alleged in the information, the defendant, while operating an automobile on a public highway in Dickinson county, Kansas, with culpable negligence as alleged ran against an automobile standing on said highway, causing said automobile to lunge forward and run against, upon and over D. J. O'Connor, then and there being, whereby the said D. J. O'Connor was then and there thrown to the ground with great force and violence, and by reason of such culpable negligence of the defendant received great bodily harm as described in the information or his life was thereby endangered, and that such results would not have occurred except for such negligence, and that he did not die therefrom, and that if death had ensued as a result therefrom the defendant would have been guilty of the major offense charged therein; then and in that event you will find the defendant guilty of the minor offense defined in paragraph 3 of these instructions, to wit: 'of unlawfully causing great bodily harm, as defined in section 21-435 of the Revised Statutes of the state of Kansas of the year 1923.'"

Defendant contends the statute creates two distinct offenses, manslaughter by culpable negligence (R. S. 21-420), and wounding or inflicting great bodily harm by culpable negligence (R. S. 21-435); the latter is not involved in the former; and the information did not contain a count charging wounding by culpable negligence. If defendant's contention were sound, he suffered no prejudice. He was convicted of manslaughter.

Eight persons, five in the Cadillac and three who were standing about the Ford, were injured, and defendant urges the instruction relating to great bodily harm focused attention on that subject, and led the jury to find he caused O'Connor's death, when O'Connor was merely wounded, and died of disease and not of his wounds. No complaint is made that the evidence adduced at the preliminary examination did not furnish a basis for an information charging manslaughter. It was essential the information for manslaughter should charge that O'Connor was wounded and that he died of his wounds.

State v. Harrison.

Proof of his wounding necessarily included all the distressing details of the accident, whether the pneumonia of which he died was traumatic or postoperative, and the court is of the opinion the conditions for determining that question were precisely the same as they would have been if the court had not instructed the jury concerning the lesser offense. The court is also of the opinion the offense of wounding by culpable negligence was included in the charge of manslaughter, and defendant would have had just cause for complaint if the court had not instructed with reference to it.

The statute required the court to state to the jury all matters of law necessary for their information in giving their verdict. Defendant contends this requirement was not met because the court did not define manslaughter at common law. The statute does not require any particular form of statement of the law (*State v. Lynch*, 86 Kan. 528, 531, 121 Pac. 351), and manslaughter at common law was sufficiently defined for any purpose of the jury by instruction No. 8. Defendant contends, however, the definition given in instruction No. 8 was not accurate because it did not state that the killing must be the result of the unlawful act, and left the jury to infer it was sufficient if the killing merely accompanied the unlawful act. The contention is hypercritical. There was but one act to which the instruction could refer, and besides that, the definition was applied beyond possibility of confusion or misunderstanding to the charge contained in the information, in the latter half of instruction No. 7.

Defendant contends the court erred in not defining culpable negligence. The kind of culpable negligence charged in the information was defined in instruction No. 7, and other kinds were not material.

A certain record was offered in evidence by the state, and was rejected by the court. The incident did not proceed far enough for the jury to be influenced by it. On cross-examination of defendant as a witness in his own behalf, the incriminating entry on the record was read to him, and he admitted he made it. Subsequent introduction in evidence of the record itself did no harm, and the evidence was competent for the purpose of affecting defendant's credibility as a witness. The jury were properly instructed with reference to the use they might make of the evidence.

The important issues of fact were whether defendant was guilty of culpable negligence in the operation of his car, and whether

43—121 Kan.

O'Connor died of the wounds inflicted on him. Cause of death was well established by expert medical testimony, which was not rebutted. The testimony bearing upon the other issue was conflicting. It would serve no useful purpose to recount the testimony. The verdict was sustained by sufficient evidence.

The judgment of the district court is affirmed: