No. 38,174

The State of Kansas, *Appellee*, v. Alfred Spohr, *Appellant*.

(230 P. 2d 1013)

Opinion filed May 12, 1951.

*Frederick L. Hall,* of Dodge City, argued the cause, and *Donald C. Smith,* of Dodge City, was with him on the briefs for the appellant.

*J. J. Mangan,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, and *C. Harold Hughes,* assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: Alfred Spohr was convicted of the offense of·manslaughter in the fourth degree as defined by G. S. 1949, 21-420, and appeals, assigning error in the particulars hereafter noted.

I. Appellant contends that the trial court erred in overruling his motion to quash the information. The information charged that on February 24, 1950, Spohr did "unlawfully, feloniously and willfully by his act, procurement and culpable negligence, kill a human being, to-wit: Elizabeth B. Greene, in that he drove and operated a motor vehicle upon U. S. Highway No. 154, . . . at a speed greater than was reasonable and proper, and while under the influence of intoxicating liquor, and crosswise of the highway into the path of, and violently against an approaching motor vehicle . . . containing as a passenger the aforesaid Elizabeth B. Greene, who received bodily injuries as the result of said collision, which said bodily injuries caused her death; . . ."

Appellant's argument is that the information failed to allege the unlawful acts of Spohr were the proximate cause of the death of

Elizabeth B. Greene, and further that the words "crosswise of the highway into the path" of the approaching motor vehicle did not state an unlawful act, and our attention is directed to certain of our decisions that the negligence charged must be some unlawful act (*State v. Harrison,* 121 Kan. 670, 249 Pac. 623; *State v. Bowser,* 124 Kan. 556, 261 Pac. 846; and *State v. Custer,* 129 Kan. 381, 282 Pac. 1071, 67 A. L. R. 909) and to other authorities that the unlawful acts and culpable negligence of the defendant must be the proximate cause of the homicide. In his brief appellant does not state wherein the information is defective under the authorities cited by him. Under G. S. 1949, 62-1004, it is required that the information state the facts constituting the offense in plain and concise language; under 62-1008 words used must be construed in their usual acceptation in common language, except where defined by law; and under 62-1009 the words used in the statute to define an offense need not be strictly pursued, but other words conveying the same meaning may be used. An information is good if it states the offense in the language of the statute. See *State v. Eason,* 163 Kan. 763, 186 P. 2d 269. An examination of the information shows that the statutory language of G. S. 1949, 21-420 was substantially followed; that driving at a speed greater than reasonable and proper, and while under the influence of intoxicating liquor, and crosswise of the highway, charged unlawful acts under G. S. 1949, 8-530, 532, 537 and 540, and that the information did charge these acts were the proximate cause of the death, even though the specific words "proximate cause" were not used. Without further comment, we hold the trial court did not err in overruling the motion to quash the information.

II. Appellant next contends that the trial court erred in admitting in evidence a confession made by the accused to Captain Glasscock of the State Highway Patrol. He directs our attention to the rule that in a criminal case evidence as to extra-judicial confessions or admissions made by an accused may be received in evidence only when freely and voluntarily made, citing textbook authority and our decision in *State v. Aguirre,* 167 Kan. 266, 206 P. 2d 118. There was no dispute in the evidence that accused, while driving westwardly at a high rate of speed along the highway in a pickup truck, came up behind a truck proceeding in the same direction and suddenly turned to his left and directly into the path of an automobile in which Elizabeth B. Greene was riding, and struck that automobile, wrecking it and causing injuries to Mrs. Greene from which she died. Some four hours after the accident the accused was ques-

tioned by Captain Glasscock. The evidence of which complaint was made concerned the kind and amount of liquor accused had consumed within a period of three or four hours prior to the collision, and whether accused was drunk. At the time of the conversation between Glasscock and the accused, accused made no complaint that he had received any injuries in the collision, but shortly after the conversation he was taken to a doctor who found he had some broken ribs and a broken arm. At a hearing when the jury was not present, the trial court found the statements made were voluntary, and they were then received in evidence when the jury was present. We find it unnecessary to dwell at length on the contention made. The state's evidence that accused's statements were freely and voluntarily made was ample. While it is true that appellant now contends that he made the statements while in great pain and at the insistence of Captain Glasscock, in the end he did not directly contradict any statement attributed to him by Glasscock. Whether considered as a confession, as contended by appellant, or as admissions against interest, as we think more accurate, it does not appear the trial court erred.

III. Appellant further contends the trial court erred in overruling his demurrer to the state's evidence. The gist of the contention is that for an accused to be guilty of manslaughter in the fourth degree under G. S. 1949, 21-420, it must be shown he killed a human being by his act, procurement or culpable negligence, which act, procurement or culpable negligence would be manslaughter at common law, and that under our decisions the negligence of the defendant must be some unlawful act, must be more than mere lack of due care or ordinary negligence and must be of a higher degree of negligence or a reckless and willful negligence, citing in support *State v. Custer*, supra, and *State v. Gloyd*, 148 Kan. 706, 84 P. 2d 966, and it is argued that although the evidence may have proved that accused drove at a speed greater than reasonable or proper, or while under the influence of intoxicating liquor, both of which are denounced as unlawful under the uniform act regulating traffic on highways (G. S. 1949, 8-530 and 532) the mere violation thereof did not make the actor guilty of negligence necessary to convict on a charge of fourth degree manslaughter, and the evidence must have disclosed a recklessness which indicated a willful and wanton disregard for the safety of persons and property, citing *State v. Custer*, supra; *State v. Gloyd*, supra; *State v. Phelps*, 151 Kan. 199, 97 P. 2d 1105; and *State v. Phelps*, 153 Kan. 337, 110 P. 2d 755. It may be

observed that in *State v. Gloyd,* supra, and the first *State v. Phelps,* supra, defendants were convicted of manslaughter in the fourth degree and appealed, the principal question, insofar as we are now concerned, being the necessity for an instruction on the lower degree of negligent homicide as defined by Laws 1937, Ch. 283, § 29, or as amended by Laws 1938, Ch. 59, § 1, and now appearing as G. S. 1949, 8-529. The second Phelps case involved no question of the sufficiency of the evidence under any contention similar to that presently presented.

*State v. Custer,* supra, contains an exhaustive analysis of the fourth degree manslaughter statute presently before us and much of a historical recital of the reasons for such a statute and reference is made thereto. In that opinion it was said in part:

"The result was it came to be thoroughly understood that the system of thought known as the common law did not sanction conviction of a man of manslaughter resulting from negligent conduct, unless his conduct was accompanied by a wrong mental attitude having the qualities of recklessness." (l. c. 387)

"In defining common-law manslaughter it should not be necessary to fill instructions with 'epithets.' The term 'reckless' is not an epithet, but a descriptive adjective. The term 'recklessness' is a fairly understandable noun. Under the statute, as applied to automobile drivers, negligence is not merely conduct which fails to conform to the familiar, common standard, the conduct of a reasonable man under like circumstances. Negligence is conduct which is induced by recklessness, and which involves undue risk of harm. To be reckless, conduct must be such as to evince disregard of or indifference to consequences, under circumstances involving danger to life or safety of others, although no harm was intended." (l. c. 395)

and it was held:

"If death results from unlawful conduct amounting to misdemeanor denounced by statute for the purpose of protecting human life and safety, and the death would not have resulted except for the unlawful conduct, the killing would be manslaughter at common law." (Syl. ¶ 4)

Our examination of the evidence shows that it is not as limited as appellant states. The evidence showed that shortly before the fatal collision the appellant, driving 50 to 55 miles per hour, came up behind another truck proceeding westwardly and attempted to pass it in the face of oncoming traffic, and a collision was then averted only because the driver of the truck being passed slowed down and went to the shoulder of the road; and that appellant drove first on one side and then on the other of the center stripe. Appellant's own testimony was that he drove behind a truck for awhile, that the road ahead was clear and he turned out to go ahead and

"all at once a light gray car was right there in front of me." Other evidence that appellant was under the influence of liquor need not be detailed. We cannot say as a matter of law that appellant's conduct was not reckless. We note appellant's argument that the evidence did not show his negligence to be the proximate cause of the death. In our opinion that contention is not good under the evidence, nor is his contention that he was confronted with an emergency and was guilty only of a mistake in judgment. We think the evidence was sufficient to go to the jury for its decision.

IV. Appellant contends the trial court erred in not granting his request that the charge of manslaughter be reduced to negligent homicide. The basis for this contention is that the evidence showed him guilty only of ordinary negligence. The elements of manslaughter in the fourth degree and the sufficiency of the evidence have been treated heretofore. The trial court gave an adequate instruction, to which no exception was taken, on the question of negligent homicide. The jury, although having an opportunity to find defendant guilty of a lesser offense, did not do so. We think there was no error in the trial court's refusal to reduce the charge as requested by appellant.

V. Appellant further contends that the trial court erred in the giving of three instructions to the jury.

In substance, the court in its instruction No. 5 advised the jury as to the elements of manslaughter at common law and as to that part of the instruction there is no complaint. It further advised the jury that if they believed from the evidence that the defendant was doing a lawful act the burden was upon the state to prove "by a preponderance of the evidence" that his conduct was reckless, or if they found from the evidence by "a preponderance thereof" that defendant was guilty of unlawful conduct amounting to a misdemeanor denounced by statute for the purpose of protecting human life, then negligence is presumed. At the trial the only objection to this instruction was that it failed to advise the jury the acts complained of must be the proximate cause of the death of Mrs. Greene. In his brief in this court appellant also complains that the use of the phrase "by a preponderance of the evidence" was improper and that the court should have instructed that the state must prove "beyond a reasonable doubt" that the acts complained of were the proximate cause of the death of Mrs. Greene.

With respect to both complaints we note that it has been held

repeatedly that instructions to a jury must be considered as a whole. See West's Kansas Digest, Criminal Law, § 822; Hatcher's Kansas Digest, Criminal Law, § 295.

Taking up first appellant's contention with respect to proximate cause, we note that by its instruction No. 4 the trial court advised the jury that the state must prove to their satisfaction "and beyond a reasonable doubt" that the defendant did, by his act, procurement and culpable negligence, drive his automobile against the automobile in which Mrs. Greene was riding, thereby inflicting a mortal injury upon her and as a result thereof she died, and that if the state did so prove, the jury should return a verdict of guilty, but that if the state did not so prove or if the evidence was sufficient to raise "a reasonable doubt" as to any of the facts necessary for the state to establish, then the jury should acquit the defendant. In instruction No. 10, to which no exception was taken, the jury was advised that proximate result is that result which occurs in a natural and continuous sequence, unbroken by any new or independent cause from the act complained of, and which result would not have occurred except for such act. We think the jury was adequately advised that defendant's acts, if established to the satisfaction of the jury and beyond a reasonable doubt, must have been the proximate cause of the death.

The use of the phrase "by a preponderance of the evidence" in instruction No. 5 was improper, but that its use was prejudicially erroneous does not follow. Without setting forth each instance in the instructions as a whole, the correct phrase "beyond a reasonable doubt" was used at least twelve times. A like situation was considered in *The State v. Husong*, 109 Kan. 84, 197 Pac. 874, where it was held:

"In a criminal case, the jury were told that the alleged facts and circumstances must be shown by 'a preponderance of evidence.' *Held,* that as the charge contained repeated admonitions that guilt must be shown beyond a reasonable doubt, the error in the use of the quoted words must be deemed immaterial." (Syl.)

In our opinion the inadvertent use of the phrase complained of was not prejudicial to the appellant.

Appellant also complains that by its instruction No. 7 the jury was not properly advised as to the meaning of the phrase "under the influence of intoxicating liquor." The substance of the instruction was that it was not necessary for the state to prove any specific

degree of intoxication, and that the term as used in the information and the instructions covered not only all of the well known and easily recognized conditions and degrees of intoxication but any mental or physical condition which was the result of indulging in intoxicating liquors which tended to deprive a driver of that clearness of intellect and control of himself which he would otherwise possess. Appellant's argument is that it is not sufficient to show only an appearance of having been drinking, but that the evidence must be sufficient to show this element of guilt "beyond a reasonable doubt," and if the evidence only created a suspicion that the defendant was intoxicated, it was insufficient. As will be observed, the contention made is not limited to the instruction. In our opinion the instruction is not subject to criticism under the reasoning and definitions in *State v. Ketter*, 121 Kan. 516, 518, 247 Pac. 430; *State v. Hayden*, 126 Kan. 799, 801, 271 Pac. 291; *Thornton v. Franse*, 135 Kan. 782, 787, 12 P. 2d 728.

And finally appellant complains that under instruction No. 12 the trial court failed to properly instruct with reference to his privilege against self incrimination. The instruction covered the matter of the purported confession or admission of guilt and advised the jury fully that the credit to be given it was a matter resting wholly in the discretion of the jury and that in determining weight and credibility to be given such confession or admission the jury was authorized to consider whether or not such confession or admission was freely and voluntarily made, whether any threats or promises were made and that generally truth or falsity of such confession or admission should be determined by the same rules as any other fact in the case. When the instruction was given appellant took exception it did not give information regarding the privilege against self incrimination, but he requested no further instruction. In his brief there is no complaint that the instruction as given is erroneous —rather the complaint seems to be that it does not contain a reiteration of the state's duty to prove that each and every part of defendant's statements was voluntary and of the truth of the contents of those statements "beyond a reasonable doubt." In our opinion the instruction was not prejudicial nor did the trial court err in not giving other or further instructions about appellant's privilege not to incriminate himself.

VI. Appellant's contention the trial court erred in denying his

motion for a new trial raises no question not previously considered. The trial court did not err in its ruling.

The judgment of the trial court is affirmed.

SMITH, J., not participating.