(598 P.2d 192)

No. 50,158

STATE OF KANSAS, *Appellee,* v. DENNIS R. JONES, *Appellant.*

Opinion filed August 3, 1979.

*Michael C. Helbert,* of Guy & Helbert, of Emporia, for appellant.

*Steven L. Davis,* assistant county attorney; *Jay W. Vander Velde,* county attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before MEYER, P.J., REES and SPENCER, JJ.

MEYER, J.: The appellant (defendant) was arrested on November 22, 1977, for driving while under the influence of intoxicating liquor. Prior to trial, the defendant moved to suppress certain statements he made to the patrolman at the time of his arrest. The trial court refused to permit an evidentiary hearing on the motion to suppress and refused an offer of proof. At trial, defendant renewed his motion to suppress the evidence obtained as a result of the arrest. The court again refused an evidentiary hearing outside the presence of the jury. At trial, the patrolman was allowed to testify as to statements made to him over a CB radio concerning defendant's having run his car into a ditch.

Also, the patrolman was permitted to testify as to what a person at that scene told him. The court gave limiting instructions as to this testimony, predicated upon the theory that the jury was not to consider the statements to be proof of the truth of the matter stated, but was only to consider them to explain a sequence of events leading to the search for, and stop of, the defendant. The court instructed on driving under the influence of intoxicating liquor, using a definition different from that approved in *State v. Sauvage,* 201 Kan. 555, 556, 441 P.2d 861 (1968). Such instruction also differed from that found in PIK Civ. 2d 8.84 (1978). The defendant was convicted; hence this appeal.

The court did not err in admitting the testimony of the patrolman as to the CB message and the on-site statements made to him. The court advised that it would permit testimony concerning these statements for the purpose of explaining the trooper's subsequent actions, and the prosecution was instructed to restrict the testimony as to those statements going to the identification of the vehicle, not further conversation.

The references made by the patrolman to the statements of the unknown witnesses tracing the automobile and giving its location were admissible for the purposes of an explanation of the patrolman's action in proceeding to the location where defendant was stopped. Such testimony is permissible to explain a sequence of events leading to action by the patrolman as it is not offered to prove the truth of the matter asserted. *State v. Hollaway,* 214 Kan. 636, 638, 522 P.2d 364 (1974). While *State v. Hollaway* involved police radio dispatch testimony, such case is analogous to testimony heard over the CB radio or by an unknown witness at the scene when such testimony is limited to explain the officer's action.

It might be said the court committed error in its instruction No. 7, wherein driving under the influence of intoxicating liquor was defined. Defendant claims two bases for his objection to the instruction: (1) there was no causality required between the drinking of intoxicating liquor and the impairment of the driver's ability to drive; and (2) the instruction incorrectly pointed to specific items of evidence to the detriment of other evidence.

The causality requirement is met by the language of the instruction used by the court which defines "under the influence" as taking such a quantity *as results* in an appreciable interference

with the exercise of ordinary care in the operation of the motor vehicle. As to causality therefore, the instruction given is not much different from either that stated in *Sauvage,* 201 Kan. at 556, or the instruction in PIK Civ. 2d 8.84 (1978).

Defendant's second observation regarding the instruction has some merit. The court instructed that "[a] person may be under the influence of intoxicating liquor even though he may walk straight or give no visible signs of intoxication to the casual observer."

Defendant herein did not consent to a blood alcohol test, and therefore, the main evidence in the case is the testimony of the patrolman regarding defendant's performance on the coordination test. Therefore, the above quoted portion of the instruction takes on added significance.

The Kansas court has disapproved any instruction which emphasizes and singles out certain evidence admitted at a criminal trial. *State v. McCorgary,* 218 Kan. 358, 365, 543 P.2d 952 (1975).

Again, were this the only error, it could probably be considered harmless, in part, because the instruction as given is no grave departure from the accepted form of instruction approved in *Sauvage,* and in part, because of the court's instruction No. 9, which stated:

"It is your duty to carefully and impartially consider all the testimony and, if possible, reconcile any apparently conflicting statements of witnesses.

"You are the sole and exclusive judges of the evidence, what it proves or disproves; of the credibility of the witnesses and of the weight and value to be given their testimony."

Of much more importance than either of the two matters discussed above was the court's failure to conduct a *Jackson v. Denno* hearing on defendant's motion to suppress statements, confessions and admissions. Defendant's claims of error surrounding the refusal to conduct an evidentiary hearing as provided by *Jackson v. Denno* emphasizes his claim that the arrest was illegal or unlawful, and thus all of what transpired thereafter was tainted—presumably both the coordination tests as well as the defendant's admissions against interest. It should be noted that a *Jackson v. Denno* hearing does not reach nontestimonial evidence. The heel-to-toe balance test and other coordination tests performed on the highway after being stopped on suspicion of driving while under the influence of intoxicating liquor do not

violate the defendant's privilege against self-incrimination, even in the absence of warnings of his constitutional rights under the *Miranda* rule. Therefore, a *Jackson v. Denno* hearing was not necessary insofar as it related to such tests, since a hearing applies only to evidence which is testimonial in nature. *State v. Faidley*, 202 Kan. 517, 450 P.2d 20 (1969).

As to defendant's arrest itself, we hold that it was not unlawful. The patrolman had a right, under the circumstances of this case, to stop the defendant on logical suspicions raised by what was learned by him from the informants. The real problem is in the failure to give *Miranda* warnings. There is no showing in the record that the defendant was advised of his *Miranda* rights.

In *State v. Baker*, 2 Kan. App. 2d 395, 398, 580 P.2d 90 (1978), we find that:

"The decision in the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), makes it clear that the State must prove the necessary warnings were given a criminal defendant and the defendant waived those rights before a confession given during custodial interrogation may be admitted at trial."

The trial court should make a determination as to whether in fact *Miranda* warnings were given prior to the admissions in question.

While the flashing red light pull over and the subsequent activities of the patrolman with the defendant (prior to the patrolman advising defendant he was under arrest) may well not have constituted an arrest, it is clear to us that the defendant was, in fact, restrained, and further—that while so restrained—he made statements in the form of admissions against his interest. Hence the defendant made statements which must be considered to have been made while he was "in custody." Certainly he would have been well justified in the belief that he was not at liberty to leave. Technical arrest is not the touchstone which sets out the time a *Miranda* warning must be given. The *Miranda* warning concerns itself with any type of custodial interrogation. See *State v. Carson,* 216 Kan. 711, 533 P.2d 1342 (1975). Neither does the record show the admissions of defendant were spontaneously made and thus exempted from the scope of *Miranda.* One such admission of the defendant in answer to questions was that he had consumed some six to eight bottles of beer; other testimony concerned questions as to how it happened that earlier that

night he ran into the ditch, and his answers thereto. It is for these reasons that a full *Jackson v. Denno* evidentiary hearing, outside the presence of the jury, should have been held to determine the voluntariness of the statements. Such a hearing might well have resulted in the exclusion of some, or possibly all, of the above mentioned statements.

We are aware that the trial judge, on two or more occasions, advised defense counsel that he would not grant an evidentiary hearing if the only thing defendant wanted to show was that the flashing light pull over of the defendant constituted an unlawful arrest. An evidentiary hearing under the rule of *Jackson v. Denno* can be waived. However, to be valid, such a waiver must be knowingly and intelligently made. In the absence of such a valid waiver, it is the duty of the trial court to hold an evidentiary hearing—even though no request for such hearing is made. *State v. Shuckahosee,* 2 Kan. App. 2d 717, 720, 587 P.2d 923 (1978). Also, we note that regardless of what defense counsel said he sought to prove at such a hearing, defendant filed his motion to suppress, which itself specifically sought to exclude statements, confessions and admissions made by defendant. Clearly, then, there was no knowing and intelligent waiver of the right by the defendant.

Had the failure to conduct a *Jackson v. Denno* hearing been the only error herein, it would have been proper for us to send this case back to the trial court only for the purpose of conducting such hearing, and then proceed as set out in *State v. Shuckahosee,* 2 Kan. App. 2d at 721, depending upon the results of such a hearing. Here, however, the error in failing to conduct such a hearing is compounded by the apparent failure to give a *Miranda* warning, the erroneously admitted admissions of the defendant, and the less than satisfactory jury instruction.

In conclusion, considering the absence of proof by the State of the giving of a *Miranda* warning, it is obvious the admissions of the defendant should have been excluded from evidence.

The judgment of the trial court is reversed with instructions to grant a new trial in keeping with this opinion.

Reversed and remanded.